FILED
11/15/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>MATTHEW ANDREAS DURHAM,<br><br>Petitioner. | No. 79139-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Matthew Durham pleaded guilty to first degree murder. He was 17 years old at the time of the crime. The State and defense jointly recommended the lowest standard range sentence of 250 months plus 60 months for a deadly weapon enhancement, for a total of 310 months of confinement. During sentencing in adult court in 2004, the trial court did not discuss Durham's youth, nor did it mention its discretion to deviate from Sentencing Reform Act (SRA)[1] standard range requirements. The trial court followed the agreed recommendation of 310 months.

Thirteen years later, our Supreme Court held in State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), that when sentencing juveniles in adult court, trial courts must consider the mitigating qualities of youth and must have discretion to depart from SRA sentencing ranges based on those considerations. Citing Houston-Sconiers, Durham submits this personal restraint petition (PRP) seeking a resentencing. For the reasons discussed below, we grant the PRP.

_____

[1] Sentencing Reform Act of 1981, Chapter 9.94A RCW.

Citations and pin cites are based on the Westlaw online version of the cited material.

I. BACKGROUND

In 2002, Matthew Durham drove Rachel Burkheimer to a remote location where John Anderson shot and killed her. Later that year, Durham pleaded guilty to first degree murder. Based on Durham's offender score, his standard sentencing range was 250–333 months. Consistent with the plea agreement, the State recommended the lowest standard-range sentence, which was 250 months for the murder charge plus 60 months for a deadly weapon enhancement, for a total of 310 months. The defense joined the State's recommendation. This joint recommendation exceeded the mandatory minimum sentence by 10 months.

Before sentencing, defense counsel submitted a presentencing report discussing Durham's background. The report explained that Durham had kidney surgery as an infant, was diagnosed with Neurofibromatosis as a child, suffered from developmental disabilities, and had no history of violence. Counsel attached letters in support of Durham, which explained that he was a nonviolent and caring person, struggled with school because of his developmental disabilities, struggled to acquire skills needed to function in society, was a "very young 17 year old," and failed to intervene in the murder because he was scared.

In 2004, during the sentencing hearing, the court noted that it had read the letters attached to the presentencing report. The court then heard from Durham's sister who explained that, though Durham was older than her, "his developmental disabilities [] often resulted in [her] looking out for him and helping him to make the best decisions." Durham's mother said that he feared violence against himself and his family and was thus unable to intervene in the murder.

2

She also explained Durham's developmental delays in motor, language, and cognitive skills. And Durham apologized to the victim's family, expressing remorse. The defense emphasized that Durham was the "youngest party [involved in the murder] going to prison" and that he played a key role in the criminal investigation.

While delivering its decision, the court noted that Durham was facing "the loss of his young life" and that this case involved a "waste of young life in many ways." It said, "I don't know why, Mr. Durham, you chose to allow yourself to get caught up in these acts. I mean, I don't know why you chose not to do something to try and stop it, to get yourself out of it. . . . and help Rachel." It said,

> There's just no reason for what happened here and why. Clearly, Mr. Durham was raised with a family that cared about him. They expected him to do right and that apparently felt that he had learned those lessons and behaved that way. Why, on this occasion, that learning and that attitude didn't come to the fore and cause you to do what you should have done to save Rachel, I don't know, but you're going to pay a heavy price for that.

The court imposed the recommended sentence, saying, "I will give you the benefit of the bargain that you struck with the State, because I sat through two trials and listened to you testify. I think you have acted in good faith to comply with your agreement with the State." The court also considered the fact that Durham told the police what happened and led them to where the victim was buried, saying, "[F]or those reasons, I will follow the recommendation that's made in this case." The court imposed 250 months plus 60 months for the weapon enhancement and said the 60 months "will run consecutively as required by law to the time on the underlying charge."

3

Thirteen years later, in 2017, our Supreme Court decided in Houston-Sconiers that trial courts sentencing juveniles as adults must consider the mitigating qualities of youth and must have the discretion to depart from SRA sentencing ranges. 188 Wn.2d at 21. Durham thus moved for relief from judgment and a resentencing under CrR 7.8. The trial court transferred the case to this court to consider as a PRP. CrR 7.8. While the case was pending, our Supreme Court decided in Ali and Domingo-Cornelio that Houston-Sconiers applies retroactively. In re Pers. Restraint of Ali, 196 Wn.2d 220, 236, 474 P.3d 507 (2020) ("Houston-Sconiers announced a new substantive constitutional rule that must be applied retroactively upon collateral review."), cert. denied, 141 S. Ct. 1754, (2021); In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 474 P.3d 524 (2020) (same). Following those decisions, the State conceded that Durham's PRP is not procedurally barred.[2]

## II. ANALYSIS

Durham seeks a resentencing, claiming that the trial court did not consider the mitigating qualities of youth or appreciate its discretion to deviate from the SRA. The State responds that (1) the invited error doctrine bars the PRP, (2) Durham has an adequate remedy under RCW 9.94A.730, and (3) he fails to establish actual and substantial prejudice. We grant Durham's petition and

---

[2] "A petitioner is generally barred from filing a PRP 'more than one year after [their] judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.'" In re Pers. Restraint of Meippen, 193 Wn.2d 310, 315, 440 P.3d 978 (2019) (quoting RCW 10.73.090(1)). "A petitioner can overcome the one-year time bar if [they] can identify (1) a significant change in the law, (2) that is material to [their] conviction or sentence, and (3) that applies retroactively." Id.

remand for resentencing in accordance with Houston-Sconiers.

As mentioned above, our Supreme Court held in 2017 that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." Houston-Sconiers, 188 Wn.2d at 21. It then explained

> the [sentencing] court must consider mitigating circumstances related to the defendant's youth—including age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected [them]." And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

Id. at 23 (citations omitted) (quoting Miller v. Alabama, 567 U.S. 460, 477–78, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)).

A. Invited error doctrine

The State says that the invited error doctrine bars Durham's PRP. It claims that because Durham joined the State's recommendation for the lowest standard range sentence rather than asking the court for an exceptional downward sentence, it cannot now challenge the court's error. Durham responds that his agreement to the State's recommendation does not bar his challenge because the trial court was not bound to follow any recommendation and he was sentenced before Houston-Sconiers was decided so he could not have waived the court's obligation to consider the mitigating qualities of youth. We conclude

that the invited error doctrine does not bar the PRP.

"'The basic premise of the invited error doctrine is that a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial.'" In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014) (quoting State v. Momah, 167 Wn.2d 140, 153, 217 P.3d 321 (2009)). The doctrine applies when the defendant "affirmatively assented to the error, materially contributed to it, or benefited from it." Momah, 167 Wn.2d at 154. The doctrine does not apply when the defendant did not take "knowing and voluntary actions to set up the error." In re Pers. Restraint of Call, 144 Wn.2d 315, 328, 28 P.3d 709 (2001). The invited error doctrine applies to constitutional errors. State v. Heddrick, 166 Wn.2d 898, 909, 215 P.3d 201 (2009).

RCW 9.94A.540(1)(a) provides that the mandatory minimum sentence for first degree murder is 240 months. Because of Durham's offender score, his standard sentencing range was 250–333 months. The defense joined the State's recommendation of 250 months plus 60 months for the enhancement. The defense did not request an exceptional downward sentence or discuss mitigating qualities of youth.

Durham claims that the trial court erred by failing to consider the mitigating qualities of youth and appreciate its discretion to depart from the SRA based on those considerations. The trial court must do so, whatever the parties request. See Houston-Sconiers, 188 Wn.2d at 21. The State cites no authority suggesting that, by joining the State's recommended sentence, Durham affirmatively assented to this error. Our Supreme Court decided Houston-

6

Sconiers 13 years after Durham's sentencing, and no indication exists that he knowingly and voluntarily set up the claimed error here. See In re Det. of W.C.C., 185 Wn.2d 260, 265 n.3, 370 P.3d 1289 (2016) (rejecting the application of the invited error doctrine because "the State presents no evidence that W.C.C. intentionally or knowingly set up the error").

The State relies on State v. Studd to contend that no exception to the invited error doctrine exists for cases in which a later change in law leads to the purported error. 137 Wn.2d 533, 547, 973 P.2d 1049 (1999) (holding that the invited error doctrine prohibited the appellants from complaining about jury instructions they proposed despite an intervening change in the law invalidating those instructions). Because the doctrine does not apply in the first instance, we need not address whether exceptions to the doctrine apply. Moreover, Studd is distinguishable because the change in law at issue there did not apply retroactively. See In re Pers. Restraint of Benn, 134 Wn.2d 868, 940, 952 P.2d 116 (1998). The State cites no authority applying the invited error doctrine to situations in which a retroactive change in law gives rise to the purported error.

B. Alternative remedy

The State says that because RCW 9.94A.730 provides Durham with an adequate remedy, he is not entitled to a resentencing. We disagree.

We may not grant a PRP unless other remedies are inadequate under the circumstances. RAP 16.4(d). RCW 9.94A.730, known as the "Miller-fix statute,"[3]

---

[3] The United States Supreme Court held in Miller that mandatory life sentences without parole for juveniles violates the Eighth Amendment to the U.S. Constitution.

allows a juvenile offender to petition the indeterminate sentence review board (ISRB) for early release after serving at least 20 years of confinement. In assessing early release, the ISRB considers whether the petitioner poses a continued risk to society. Ali, 196 Wn.2d at 245 ("[T]he Department of Corrections will assess the petitioner's dangerousness and the likelihood that they will engage in future criminal behavior.").

In State v. Scott, our Supreme Court held that petition for early release under RCW 9.94A.730 was an adequate remedy barring the defendant's PRP. 190 Wn.2d 586, 592, 416 P.3d 1182 (2018). The sentencing court imposed a de facto life sentence on Scott for crimes he committed when he was a juvenile. Id. at 589. By the time of his PRP, which was based on Miller, Scott had been confined for over 20 years and had already petitioned for release under RCW 9.94A.730. Id. at 598. The court held "that RCW 9.94A.730's parole provision is an adequate remedy for a Miller violation, rendering unnecessary the resentencing of a defendant who long ago received a de facto life sentence as a juvenile." Id. at 588.

By contrast, in Ali, our Supreme Court granted the petitioner's PRP, concluding that RCW 9.94A.730 was an inadequate remedy under the circumstances. 196 Wn.2d at 246. Ali petitioned for resentencing, claiming the sentencing court did not comply with Houston-Sconiers. Id. at 229. At the time

---

Miller, 567 U.S. at 489. RCW 9.94A.730 allows a person convicted of a crime committed when they were a juvenile to petition for early release.

of his PRP, Ali had apparently been confined for about a third of his 26-year sentence. Id. at 226, 229. The court noted that while Miller is limited to life sentences and de facto life sentences, Houston-Sconiers applies whenever a sentencing court imposes an adult standard sentence on a juvenile. Id. at 246. The court said, "While RCW 9.94A.730 might provide an adequate remedy for a Miller violation, it may be grossly inadequate under the circumstances of a Houston-Sconiers violation." Id. The court also noted the difference between the ISRB's assessment of continued dangerousness versus the sentencing court's assessment of youthfulness during sentencing. Id. at 245. The court rejected the idea that RCW 9.94A.730 would provide an adequate remedy for Ali because it would "still require Ali to serve most of the sentence imposed in violation of Houston-Sconiers before he could even be considered for early release." Id. at 246.

Law enforcement arrested Durham in late 2002 and he has been confined since then. The trial court transferred Durham's CrR 7.8 motion to this court as a PRP in August 2018. The earliest he would be eligible to petition for early release is late 2022. RCW 9.94A.730.

Granted, Durham is further along in his confinement compared to Ali. See Houston-Sconiers, 188 Wn.2d at 20 ("Indeed, the only time the Supreme Court has spoken approvingly of a postsentencing Miller "fix" such as extending parole eligibility to juveniles is when addressing how to remedy a conviction and sentence that were long final."). But when Durham petitioned for resentencing, he was not eligible to petition the ISRB for at least four years. And at this time,

he is not eligible for about another year.  A year spent in confinement is significant.  Cf. MacFarlane v. Walter, 179 F.3d 1131, 1141 (9th Cir. 1999) (in the context of habeas corpus petitions, observing that "even a single extra day of incarceration is of substantial significance for constitutional purposes"), cert. granted, opinion vacated sub nom. Lehman v. MacFarlane, 529 U.S. 1106, 120 S. Ct. 1959, 146 L. Ed. 2d 790 (2000).  In Scott, the defendant was already eligible and had petitioned for early release at the time of his PRP.  190 Wn.2d at 598.  Also, as the court in Ali noted, the ISRB's review differs functionally from the trial court's consideration at sentencing.  The ISRB considers continued dangerousness while the trial court must consider the mitigating qualities of youth at the time the crime was committed.  See Houston-Sconiers, 188 Wn.2d at 20 ("Critically, the Eighth Amendment requires trial courts to exercise this discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line.").  Given the foregoing, we conclude that RCW 9.94A.730 does not provide Durham an adequate remedy.

C. Actual and substantial prejudice

Durham says he experienced actual and substantial prejudice because the trial court did not consider the mitigating factors of youth and that the court imposed the lowest standard range sentence shows that it likely would have imposed a shorter sentence had it appreciated its discretion to do so.  The State disputes this by claiming that there is no indication the court would have imposed a shorter sentence had it complied with Houston-Sconiers.  The State emphasizes that the court was aware of the evidence pertaining to the Houston-

Sconiers analysis.  We conclude Durham has established actual and substantial prejudice.

"A petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the constitutional error in order to obtain relief on collateral review."  Domingo-Cornelio, 196 Wn.2d at 267.  "[A] petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration."[4]  Id. at 268.

The presentencing report and attached letters explained that Durham experienced a developmental disability and a neurological disease, was a caring and nonviolent person, and did not intervene in the murder because he was afraid.  During sentencing, the trial court heard similar statements.  The court noted that it had read the letters attached to the presentencing report.  The court talked about a "waste" and a "loss" of "young life" but did not otherwise comment on Durham's age.  The court noted that Durham had acted in good faith in testifying against his co-defendants and aiding the criminal investigation and said it would give him the benefit of his plea agreement.  The court imposed the jointly

---

[4] While Domingo-Cornelio discusses a juvenile "tried" as an adult, nothing in Houston-Sconiers suggests that its holding is limited to cases involving a trial.  See, e.g., Houston-Sconiers ,188 Wn.2d at 19 (requiring trial courts to apply its mandate when a juvenile is *sentenced* as an adult).  Thus, Houston-Sconiers apparently applies to cases involving plea agreements.  See State v. Ortiz, noted at 13 Wn. App. 2d 1100, 2020 WL 3268336 at *5 (assessing whether the trial court conducted a Houston-Sconiers analysis in a case involving a plea agreement), review denied, 196 Wn.2d 1037, 479 P.3d 655 (2021); see GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

recommended sentence of 310 months, which included the lowest standard range sentence for the murder charge, 250 months, plus 60 months for a weapons enhancement.

The State likens this case to In re Pers. Restraint of Meippen, 193 Wn.2d 310, 440 P.3d 978 (2019). There, our Supreme Court held that the petitioner was not prejudiced because "[n]othing in our record suggests that the trial court would have exercised its discretion to depart from the SRA sentence enhancement guidelines." Id. at 317. During sentencing, which occurred before our Supreme Court decided Houston-Sconiers, the defense "argued that mitigating qualities of youth—Meippen's age, immaturity, and failure to appreciate the consequences of his actions—supported a sentence at the bottom of the standard range." Id. at 316. The court observed that the trial court considered those mitigating factors and still decided to impose "a top-end standard range sentence." Id. The court noted, "The trial court determined that Meippen's actions were cold and calculated, and it clearly intended to impose a sentence at the top of the standard range despite Meippen's youth." Id. at 317.

But here, though the court said it did not understand Durham's actions, those comments do not rise to the level of saying the defendant's actions were "cold and calculated." See id. Nor did the court impose a "top-end standard range sentence" despite a request for a sentence at the bottom of the standard range. Instead, the court imposed a sentence at the bottom of the standard range. And while defense counsel did provide information about Durham's background, it did not directly address how youth played a role in the crime.

12

This case more resembles Domingo-Cornelio. There, defense counsel submitted letters supporting Domingo-Cornelio but did not argue "any mitigating factors relating to youthfulness or request an exceptional sentence." 196 Wn.2d at 261, 268. The sentencing hearing also occurred before Houston-Sconiers. Id. at 261. "The sentencing judge said that she had read the letters from friends and family and imposed this sentence 'considering all of the information before the Court,' but she made no mention of Domingo-Cornelio's youth in her ruling." Id. The court determined that there was "no evidence that the sentencing judge considered any mitigating qualities of Domingo-Cornelio's youth or that she knew she had discretion to impose an exceptional sentence based on youth, just that she was aware of his age at the time of the crimes." Id. at 268. The court emphasized that "actual and substantial prejudice is not limited to circumstances where defense counsel makes an argument that is not legally available and the sentencing judge explicitly states that they would deviate from the SRA on that basis if they could." Id. at 267. The court held that a petitioner can establish prejudice "when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration." Id. at 268. The court observed that the imposition of "the lowest standard range sentence when the State recommended the high end sentence is evidence that the judge was willing to consider mitigating factors that justify a lower sentence." Id. The court concluded that the petitioner was prejudiced and ordered a resentencing. Id. at 269.

We recently ordered resentencing in a somewhat similar context. See In re Pers. Restraint of Forcha-Williams, 18 Wn. App. 2d 167, 490 P.3d 255 (2021). During a pre-Houston-Sconiers sentencing hearing, the trial court imposed an indeterminate midrange sentence. Id. at 173. Forcha-Williams petitioned for a resentencing, arguing that the trial court violated Houston-Sconiers. Id. at 169. We concluded that the trial court meaningfully considered youthfulness based on these grounds: the trial court said, "[this case] is incredib[ly] indicative of what happens when kids step out of schooling," it recognized Forcha-Williams's substance abuse and other struggles, it noted the difficulty of being tried as an adult as a teenager, and it discussed his prospects for rehabilitation. Id. at 183. But we determined that the trial court's comments about how little discretion it had to depart from the SRA showed that it did not appreciate its actual discretion to depart from the SRA. Id. at 177, 184. As a result, we concluded that Forcha-Williams had been prejudiced. Id. at 170.

Here, aside from saying this case involved a "waste" and a "loss" of "young life," the trial court made no comments about Durham's age, pressure from the older co-defendants, or any other considerations under Houston-Sconiers. Thus, unlike in Forcha-Williams, the court did not meaningfully consider the mitigating qualities of youth. See id. at 182 ("'The sentencing court must thoroughly explain its reasoning, specifically considering the differences between juveniles and adults identified by the Miller Court and how those differences apply to the case presented.'" (quoting State v. Ramos, 187 Wn.2d 420, 444, 387 P.3d 650 (2017))).

14

The trial court also did not appreciate its discretion to depart from the SRA. Granted, the trial court here did not make clear comments about lacking discretion like the trial court in <u>Forcha-Williams</u>. Arguably, the only such comment was that it was running the 250 months consecutively with the 60 months "as required by law." But in <u>Forcha-Williams</u>, this court determined that a failure to appreciate discretion occurred even where the trial court imposed a midrange sentence rather than a low-end sentence. Here, the court imposed the lowest standard range sentence. This, taken together with a lack of any comments about its discretion, establish that the court—13 years before <u>Houston-Sconiers</u>—did not appreciate its discretion to depart from the SRA. <u>See</u> <u>Domingo-Cornelio</u>, 196 Wn.2d at 267 ("[A]ctual and substantial prejudice is not limited to circumstances where . . . the sentencing judge explicitly states that they would deviate from the SRA on that basis if they could.").

The State points to two of the trial court's comments to contend the court would likely not have imposed a shorter sentence had it conducted a <u>Houston-Sconiers</u> analysis. First, the State says the court's comment that it did not understand why Durham did not intervene shows that it considered and rejected the mitigating qualities of youth. It claims this comment shows that the trial court "did not believe that [Durham] was pressured into becoming involved." This is an inferential leap. The trial court could have made similar comments about an adult. And the comment arguably suggests that the court did not meaningfully consider the mitigating qualities of youth such as the effect of peer pressure. Second, the State says the court's comment that it would give Durham the

benefit of his plea agreement because he had acted in good faith shows that the court would impose the recommended sentence but nothing less. Without more, this comment does not suggest that the court would not have imposed a lower sentence had it meaningfully considered the mitigating qualities of youth and appreciated its discretion to depart from the SRA.

Because the record does not show that the trial court considered the mitigating qualities of youth or appreciated its discretion to depart from the SRA based on those considerations, Durham has established actual and substantial prejudice.[5] "Unless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile under Houston-Sconiers." Domingo-Cornelio, 196 Wn.2d at 268.

We grant Durham's PRP and remand for resentencing.

_____
Chun, J.

WE CONCUR:

_____          _____

---

[5] See also In re Pers. Restraint of Chavez, noted at 15 Wn. App. 2d 1063, 2020 WL 7861218 at *4 (2020) (finding prejudice because, even though the trial court imposed a midrange sentence, if the court "had the benefit of Houston-Sconiers and considered Mr. Chavez's history of abuse together with the brain science regarding age, there is a substantial likelihood the trial court would have opted for something less than a sentence at the midpoint of the adult standard range"); see GR 14.1(c).