[No. 25281-0-I.   Division One.   July 29, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. CLIFFORD LEE COOPER, *Appellant*.

*Randolph Lee Finney,* for appellant.

*Betty Brinson,* for respondent.

SCHOLFIELD, J. — Clifford Cooper appeals his exceptional sentence for two counts of first degree murder. We affirm.

FACTS

On January 13, 1989, Cooper was charged by amended information with two counts of aggravated murder in the first degree for the shooting deaths of Dan Lane and Patrick Fuquay. However, on May 15, 1989, the State filed a second amended information charging Cooper instead with two counts of murder in the first degree. At the same time, Cooper pleaded guilty to both counts of murder in the first degree, stating in his own words:

> I killed Dan Lane and Patrick [F]uquay[.] I acted with pre-meditation and with the intent to cause their deaths[.] [T]his happened in Watcom [sic] County[.]

The substance of the plea agreement was contained in Cooper's plea statement as follows:

> I have been informed and fully understand that the Prosecuting Attorney will make the following RECOMMEN-DATIONS to the Court:
> 1. That the defendant receive an exceptional sentence, and serve 420 months on Count I, and 420 months on Count II, to be served consecutively, one with the other, for a total of 840 months.
> 2. That the defense will agree with the State's recommendatin [sic] of an exceptional sentence in this case and will recommend that the sentences be served consecutively, one with the other. The defense will be free to recommend to the Court the range for the consecutive sentences.
> 3. The "Real Facts" supporting the pleas of guilty will consist of the affidavit of probable cause, the defendant's confession, the FBI reports, and the photographs and video tapes done by the Bellingham Police Department.
> 4. That the defendant cooperate fully and truthfully with the State of Washington in the investigation of the deaths of Dan Lane and Patrick Fuquay. That the defendant, if asked to make any statements or called upon to testify in any proceeding concerning these deaths, and any other person or persons involved, shall offer truthful information and testimony.

The factual circumstances surrounding the murders are as follows: Cooper met Dan Lane through Cooper's former roommates, Joe and Cindy Saselli. Cooper and Lane became

friends because they were both interested in hunting, trapping and guns, and Cooper was fond of Lane's dog. Lane introduced Cooper to cocaine and became Cooper's regular supplier. Apparently, Lane often manipulated Cooper into giving him items of personal property by offering to buy the items from Cooper, then paying with drugs. This angered Cooper, but he felt unable to confront Lane about it.

The plan to kill Lane was conceived by Joe Saselli, ostensibly because Saselli suspected that Lane was having an affair with Saselli's wife, Cindy. Saselli told Cooper of his suspicions on Tuesday, October 18, 1988, 4 days before the murders occurred, while Cooper was helping the Sasellis move to a new house. About 24 hours before the Friday night murders took place, Saselli set forth his plan that Cooper would provide the gun, drive Saselli to Lane's house, and then Saselli would murder Lane.

After they went to the liquor store and began drinking Friday evening, Saselli told Cooper that it would be better if Cooper killed Lane. He reasoned that Lane would be less suspicious if Cooper brought a gun to Lane's house, since he had done so before. Saselli also told Cooper to kill anyone else he found at Lane's house. To encourage Cooper to commit the murders, Saselli reminded Cooper how often Lane had "ripped him off" in the past. Cooper agreed to do the murders because Joe Saselli "was [his] friend.' "

Cooper told the police in his statement that he wore jeans, tennis shoes, and a navy rain slicker when he went to Lane's house. He was also wearing a watch cap and women's makeup, applied by Cindy Saselli. Beneath the watch cap Cooper was wearing a Halloween bald head, purchased at Fred Meyer. He had rubber gloves that he had purchased that evening at Clark's Market. Cooper carried the weapon, a shotgun, underneath his coat in a sling he had purchased earlier that day at Yeager's.

Cooper and Saselli drove to Lane's house. When he entered, Cooper told Lane that he had just gone to a Halloween party, to explain the clothing and makeup. As Lane turned away from Cooper, Cooper shot him three times,

then shot Lane's dog and Patrick Fuquay, a visitor to Lane's house. According to the trial court's finding,

> [t]he wound to Patrick Fuquay was a non-fatal wound and he was still alive and conscious. He asked Clifford Cooper why he had shot him and pleaded for his life. Clifford Cooper looked in the apartment for a handgun that he knew was present, due to the fact that he was out of shotgun shells. Upon finding the handgun, he approached Patrick Fuquay and told him to turn his head and shot him seven times in the head at point blank range.

Finding of fact 3. Cooper's brief disputes this finding concerning whether Fuquay pleaded for his life.

According to the State, his taped confession indicated that after Cooper located the handgun, he told Fuquay that he didn't know why he had shot him, and then he told Fuquay to turn his head and he "put [Fuquay] out of his misery" by emptying the handgun into Fuquay's head. Brief of Respondent, at 6.

According to Cooper's brief, Detective McNeill asked Cooper if he was "helping" Fuquay and Cooper answered that he thought he was helping because Fuquay was in so much pain, and he (Cooper) took the pain away. When Fuquay was lying on the floor and asked Cooper why he was shooting them, Cooper told Fuquay, "Because, I don't know."[1] Brief of Appellant, at 31.

When the police first approached Cooper to ask him about the murders, Cooper denied any involvement, and he informed the police that the shotgun he owned was in his truck. Cooper took the police to look at the gun, and he appeared surprised to discover that the shotgun was not in the truck.

At the sentencing hearing, the trial court was made aware of the fact that Cooper was 21 years old, had completed grade 12 in special education, and had no adult criminal history. In addition, the defense presented the testimony of Dr. Herbert Marra, a clinical psychologist.

---

[1] The record before this court does not contain Cooper's taped confession. However, the taped confession was played for the trial court, and the trial court had the benefit of a complete transcript at the time of sentencing.

Marra testified that although Cooper was of average intelligence, he had a tremendous gap in his ability to deal with both written and verbal language, he was easily downed in an argument, and he exhibited "dependent personality disorder", that is, he relied on others to make decisions for him and was vulnerable to being influenced. Marra testified further that in his opinion, the excessive violence of Cooper's crimes was the result of fear for his own safety, as indicated by his comments to the police.

The standard range for a single count of murder in the first degree with an offender score of zero would have been 240 to 320 months, but was elevated on the basis of the current offenses rule to 271 months to 361 months. The trial court sentenced Cooper to 320 months on each count, to be served consecutively, for a total of 640 months. The trial court set forth its findings and conclusions as follows:

### Findings of Fact

1. The Defendant **Clifford Cooper** was knowledgeable about guns and was fully aware of the close range killing power of a twelve gauge shotgun.

2. That on the 22nd day of October, 1988 **Clifford Cooper** entered Dan Lane's apartment dressed in a disguise and shot his friend Dan Lane three times with his twelve gauge shotgun. He shot Dan Lane's dog with one shot from the shotgun, and then shot Patrick Fuquay once with the shotgun.

3. The wound to Patrick Fuquay was a non-fatal wound and he was still alive and conscious. He asked **Clifford Cooper** why he had shot him and pleaded for his life. **Clifford Cooper** looked in the apartment for a handgun that he knew was present, due to the fact that he was out of shotgun shells. Upon finding the handgun, he approached Patrick Fuquay and told him to turn his head and shot him seven times in the head at point blank range.

5. [*sic*] Upon leaving Dan Lane's apartment, **Clifford Cooper** picked up a number of the expended *shotgun* shells and threw them in the bushes as he was leaving the area.

6. When the police contacted **Clifford Cooper** on October 22, 1988, he lied to them about his involvement.

7. When Detective McNeill took a statement from **Clifford Cooper** the following day, he again lied about what had actually occurred.

8. **Clifford Cooper** was drinking before this incident, but not to the degree of being able to have a defense due to alcohol or drug intoxication.

9. **Clifford Cooper** killed Dan Lane with premeditated intent and also killed Patrick Fuquay with premeditated intent.

10. **Clifford Cooper** went to this residence with the intent to kill Dan Lane and anyone else that was present.

11. That **Clifford Cooper** discussed this killing over a number of days, with others, and obtained a disguise and also a sling for the shotgun that was used.

12. The standard range sentence for one count of murder in the first degree for **Clifford Cooper** would be 240-320 months. An additional count of murder in the first degree increases the standard range to 271-361 months. This increase is only 31-41 months for an additional murder in the first degree.

. . . .

### Conclusions of Law

1. The Defendant's conduct during the commission of the murder of Dan Lane and Patrick Fuquay manifested a deliberate cruelty to the victims, especially to Patrick Fuquay.

2. The murders of Dan Lane and Patrick Fuquay involved multiple victims.

3. The murders of Dan Lane and Patrick Fuquay did not involve a high degree of sophistication, but did involve a degree of planning which took place over a substantial period of time.

4. The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purposes of the Sentencing Reform Act.

5. An exceptional sentence is proper in this case and the term of 320 months on each offense to run consecutively for a total of 640 months will be commensurate with the punishment imposed on others, promote respect for the law by providing punishment which is just and protect the public insofar as the criminal law can.

This appeal timely followed.

PLEA AGREEMENT

Cooper argues that although he was bound to agree as part of the plea agreement that the sentences be served consecutively, he did not waive his right to appellate review. The State concurs that Cooper could not waive the court's responsibility to support an exceptional sentence with adequate findings and conclusions. While both parties appear to believe that Cooper did not waive his right to appeal the fact that the trial court ordered his sentences be served consecutively, we do not agree. A defendant may waive his

or her right to appeal, so long as the waiver is done intelligently, voluntarily, and with an understanding of the consequences. *State v. Perkins*, 108 Wn.2d 212, 737 P.2d 250 (1987).

Cooper's statement on plea of guilty clearly indicates that Cooper would recommend to the trial court that the sentences be served consecutively. At the very least, if this is not a waiver of the right to appeal the consecutive nature of the sentences, it is invited error. Cooper has not argued on appeal that he did not understand what consecutive sentences meant, nor does he seek to set aside the guilty plea. He received the benefit of the bargain because the State reduced the charges from aggravated murder to murder, and he should not be heard to complain.

Cooper argues that just as a defendant cannot agree to a sentence beyond the statutory maximum for the crime,[2] so he could not agree to an exceptional sentence unsupported by adequate findings and conclusions. Cooper's analysis is faulty. His circumstances are not analogous to that of a defendant protected by RCW 9.94A.120(11). Rather, his circumstances fall squarely within the parameters of the statute. He was free to agree to any sentence as part of the guilty plea so long as the sentence given did not exceed the statutory maximum. The maximum term for murder being life imprisonment, Cooper's sentences did not exceed the statutory maximum.

Finally, Cooper concluded his sentencing memorandum to the trial court as follows:

> Defendant is bound by the plea bargain to acquiesce to the consecutive service of his sentences. In setting the prison term that 21 year old CLIFF COOPER is to serve, he would submit that two standard range sentences would best adress [*sic*] the purpose of the Sentencing Reform Act.

That is exactly what the trial court did at sentencing. Cooper received consecutive standard range sentences and

---

[2]RCW 9.94A.120(11) states in pertinent part: "[A] court may not impose a sentence providing for a term of confinement or community supervision or community placement which exceeds the statutory maximum for the crime as provided in chapter 9A.20 RCW."

cannot challenge the consecutive nature of the sentences on appeal. Thus, this court need not consider Cooper's assignments of error regarding the adequacy of the trial court's findings and conclusions concerning the exceptional sentence.

Judgment affirmed.

GROSSE, C.J., and FORREST, J., concur.