174 P.3d 1201 (2007)
STATE of Washington, Respondent,
v.
Walter R. DILLON, Appellant.
No. 54560-4-1.
Court of Appeals of Washington, Division 1.
December 24, 2007.
*1202 Elaine L. Winters, Washington Appellate Project, Attorney at Law, Seattle, WA, for Appellant.
Brian Martin McDonald, Prosecuting Atty King County, King Co. Pros/App Unit Supervisor, Seattle, WA, for Respondent.
GROSSE, J.
¶ 1 A defendant who agrees to an exceptional sentence and does not challenge the validity of the plea agreement itself may not challenge only that exceptional sentence. This is particularly true here where Walter Dillon agreed to an exceptional sentence greater than that actually imposed by the trial court. Dillon received the benefit of his bargain. We affirm.

FACTS
¶ 2 In October 2001, Walter Dillon was charged in King County Superior Court with one count of first degree rape and one count of second degree rape, both incidents dating from February 1997. Pursuant to RCW 43.43.754, the State collected biological deoxyribonucleic acid (DNA) samples from Dillon upon conviction for robbery in August 2001. This DNA information led to the identification of Dillon as a suspect and was essential to the State's case against him for the 1997 rapes.
¶ 3 While out on bail pending trial for the rape charges, Dillon allegedly robbed several banks at gunpoint. Under a separate cause number, Dillon was charged with a total of four counts of first degree robbery.
¶ 4 The two rape counts were severed for trial. A jury found Dillon guilty of the second degree rape. The first degree rape trial ended in a mistrial with a hung jury. Prior to retrial, the State chose to proceed to trial on the robbery charges.
¶ 5 On June 18, 2004, the parties resolved all pending counts under both cause numbers by a package plea agreement, shortly before the close of the robbery trial. Dillon entered an Alford[1] plea to first degree rape and *1203 stipulated to an agreed recommendation of an exceptional sentence of 500 months' confinement. The standard sentencing range for first degree rape, given Dillon's offender score, as stipulated to by Dillon for purposes of sentencing, was 240 to 318 months' confinement. The following language was handwritten in the plea agreement, "[t]he State and defendant are agreeing to 500 months' confinement, an agreed exceptional sentence." In the plea, Dillon stated that he did not believe he was guilty of first degree rape and was pleading guilty in order to "take advantage of the prosecutor's offer." At his sentencing hearing, Judge Sharon Armstrong confirmed that Dillon understood that 500 months' confinement is an exceptional sentence and that it was not only the State's recommendation but Dillon's own recommendation to the court as well.
¶ 6 As part of the plea agreement, the State dropped one count of first degree robbery and reduced the other three counts to first degree theft. Dillon pleaded guilty to these reduced charges, the first degree rape, and recommended an exceptional sentence for the rape count because he was "looking at life in prison for the bank robbery charges."
¶ 7 Dillon was sentenced to 400 months' confinement for first degree rape, 100 fewer than jointly recommended by the parties. Dillon was also sentenced to 280 months for the second degree rape (as found guilty by jury verdict) and 57 months for each of the three counts of first degree theft (guilty by plea), all to be served concurrently with the 400 month exceptional sentence for first degree rape. The second degree rape and theft sentences were within the applicable standard sentencing ranges.
¶ 8 The United States Supreme Court decided Blakely v. Washington[2] shortly after Dillon's sentencing. On June 14, 2005, Dillon timely appealed his exceptional sentence for first degree rape alleging denial of his Sixth Amendment right to have a jury determine facts supporting an exceptional sentence beyond a reasonable doubt, contrary to the Blakely ruling. Dillon appeals only his exceptional sentence and does not challenge the validity of his package plea agreement. Dillon also appeals the seizure of his DNA upon conviction of a felony as unconstitutional.

ANALYSIS
¶ 9 The Sixth Amendment guarantees a criminal defendant the right to trial by a jury.[3] In Apprendi v. New Jersey, the United States Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[4] In Blakely, the Supreme Court clarified that "`statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."[5] Or, the statutory maximum is that which a judge may impose without any additional findings.
¶ 10 A defendant, however, is free to waive his Sixth Amendment rights, including his Apprendi/Blakely rights. An effective waiver of Sixth Amendment jury rights must be made intelligently, voluntarily, and with an understanding of the consequences.[6]
¶ 11 Under State v. Poston,[7]State v. Ermels,[8] and State v. Cooper,[9] a defendant who has explicitly stipulated to or made an agreed recommendation of an exceptional sentence as part of the plea agreement has effectively waived the right to appeal such a *1204 sentence. In Ermels, that waiver was expressly made as part of the defendant's plea agreement. In Cooper, this court held that such a recommendation was, at a minimum, invited error, if not an outright waiver. And in Poston, this court held that a defendant's exceptional sentence was indivisible from his plea agreement that could not be appealed without challenging the validity of his entire plea agreement.
¶ 12 Washington courts have long recognized that plea agreements involve one bargain or a "`package deal.'"[10] Dillon pleaded guilty to multiple charges at the same time, in a single document, resolving all pending charges against him. As part of his plea, Dillon agreed to an exceptional sentence of 500 months and the State dropped one count and reduced three others. Dillon entered into the plea agreement as he was "looking at life in prison for the bank robbery charges" and wanted to "take advantage of the prosecutor's offer." The court sentenced Dillon to an exceptional sentence of 400 months' confinement, 100 fewer than agreed to by Dillon as part of his plea.
¶ 13 Dillon, like the defendant in Poston, now seeks to appeal that sentence but does not challenge or seek to withdraw his plea agreement. Like Dillon, Philip Poston benefited from his plea bargain by avoiding a potentially much longer sentence as the State dropped several pending charges as part of the plea agreement. This court held Poston could not change the terms of his bargained for benefits that he had already received by challenging only his exceptional sentence and not the underlying plea agreement.[11] Here, Dillon also received the benefit of his bargain. Dillon's exceptional sentence may be upheld simply on the basis that he recommended it and that he did so intelligently and voluntarily.
¶ 14 In Cooper, as part of a plea agreement, the defendant recommended the imposition of two consecutive sentences of 420 months each for two counts of first degree murder for a total of 840 months, an exceptional sentence. Clifford Cooper was held barred from appealing his exceptional sentence when imposed as recommended as Cooper had knowingly and voluntarily recommended that sentence as part of a plea agreement. Further, the sentence did not exceed the statutory maximum.[12] Like Cooper, Dillon recommended an exceptional sentence as part of his plea bargain. The statutory maximum for rape in the first degree with Dillon's offender score of 9 plus, which Dillon stipulated to for the purposes of sentencing, was life in prison. Dillon's sentence was less than both the statutory maximum and the agreed recommendation made to the sentencing court by Dillon himself. Moreover, Dillon does not argue that he did not understand the exceptional nature of the sentence that he recommended. While Dillon was pro se during his plea and sentencing, he intelligently and voluntarily made the agreed recommendation of an exceptional sentence.
¶ 15 Furthermore, like in Poston, there is a valid basis to uphold Dillon's exceptional sentence that does not rely on impermissible Blakely fact finding. Not every basis for an exceptional sentence must be valid for an appellate court to uphold that sentence provided it is satisfied a trial court would have imposed same sentence based solely on the remaining valid factor(s).[13] The Poston and Ermels courts cite In re Personal Restraint of Breedlove for the proposition that a stipulation to an exceptional sentence is enough, without more, to constitute a substantial and compelling reason justifying the imposition of an exceptional sentence.[14] The Breedlove court rejected the argument that an exceptional sentence based solely on a stipulation to one was not statutorily authorized under the Sentencing Reform Act of 1981(SRA).[15] The Breedlove court found that while not specifically enumerated, agreement *1205 of the parties was a substantial and compelling interest "`considering the purpose of [the SRA].'"[16] Since Dillon made an agreed recommendation of an exceptional sentence as part of his plea, the sentencing court did not need to find any additional facts in order to impose the exceptional sentence. There simply is no Blakely violation.
¶ 16 Dillon cannot challenge his exceptional sentence without also challenging his plea agreement.
¶ 17 Further, Dillon asserts the State's collection of biological samples of his DNA upon conviction of a felony pursuant to RCW 43.43.754 constituted an illegal seizure under the Fourth Amendment to the United States Constitution. He also asserts it violated his right to privacy under article I, section 7 of the Washington Constitution. These arguments were recently squarely addressed and rejected by the Washington Supreme Court in State v. Surge.[17]
¶ 18 For the above reasons, we affirm.
WE CONCUR: ELLINGTON and COLEMAN, JJ.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] U.S. Const. amend. VI.
[4] Apprendi, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[5] Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted) (quoting Ring v. Arizona, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)).
[6] State v. Cooper, 63 Wash.App. 8, 13-14, 816 P.2d 734 (1991)(citing State v. Perkins, 108 Wash.2d 212, 737 P.2d 250 (1987)).
[7] 138 Wash.App. 898, 158 P.3d 1286 (2007).
[8] 156 Wash.2d 528, 131 P.3d 299 (2006).
[9] 63 Wash.App. 8, 816 P.2d 734.
[10] Ermels, 156 Wash.2d at 540-41, 131 P.3d 299 (quoting State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003)).
[11] Poston, 138 Wash.App. 898, 158 P.3d 1286.
[12] Cooper, 63 Wash.App. at 13-15, 816 P.2d 734.
[13] Poston, 138 Wash.App. at 908, 158 P.3d 1286.
[14] Breedlove, 138 Wash.2d 298, 300, 979 P.2d 417 (1999).
[15] Chapter 9.94A RCW.
[16] Breedlove, 138 Wash.2d at 306, 979 P.2d 417 (quoting former RCW 9.94A.120 (1999), recodified as RCW 9.94A.505 (Laws of 2001, ch. 10, § 6)); see also former RCW 9.94A.535 (2005) amended by Laws of 2007, ch. 377, § 10.
[17] 160 Wash.2d 65, 156 P.3d 208 (2007).